**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FAIRWAY VILLAGE CONDOMINIUMS** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 22-2022** |
| **INDEPENDENT SPECIALTY INSURANCE CO.** | **SECTION: "G"** |

**ORDER AND REASONS**

This litigation arises out of an insurance coverage dispute. Before the Court is Defendant Independent Specialty Insurance Company's ("Defendant") "Motion to Compel Arbitration."[1] Defendant argues that Plaintiff Fairway Village Condominiums' ("Plaintiff") claims are subject to mandatory arbitration under the terms of the surplus lines policy covering the insured property.[2] Plaintiff opposes and argues that "Louisiana law has long established a prohibition against arbitration provisions in insurance policies that deprive courts of the jurisdiction" over claims involving insurance policies underwritten by United States based insurers.[3] Considering the motion, the memoranda in support and opposition, the record, and the applicable law, this Court denies Defendant's motion.

**I. Background**

Plaintiff asserts that Hurricane Ida caused extensive damage to Plaintiff's condominium complex located at 382 Fairway Drive, LaPlace, Louisiana 70068 (the "Property").[4] Plaintiff avers

---

[1] Rec. Doc. 24.

[2] Rec. Doc. 24-1 at 1.

[3] Rec. Doc. 25 at 2.

[4] Rec. Doc. 1 at 1–2.

that Defendant issued a policy of insurance covering the Property for damages from named storms (the "Policy").[5] Plaintiff contends that it provided Defendant with a claim for damages related to Hurricane Ida no later than September 6, 2021.[6] Plaintiff alleges that Defendant "was aware of the massive scale of repairs warranted and that insurance proceeds would be needed as soon as possible to commence with repairs in order to mitigate further damages."[7] Plaintiff avers that in the processing of its claim, Defendant retained Ron Sorenson ("Sorenson") as field adjuster, Velocity Claims, LLC, ("Velocity") to administer the claim on behalf of Defendant, and Larry Jacobs ("Jacobs") of Sedgwick Delegated Authority ("Sedgwick") to serve as the Third Party Claims Administrator for Velocity.[8]

Plaintiff avers that Sorenson's September 9, 2021 Inspection of the Property provided Defendant with a complete and sufficient proof of loss.[9] Plaintiff asserts that Defendant made an initial advance payment of $200,000 to Plaintiff on September 21, 2021.[10] Plaintiff alleges that Defendant made three additional payments in February and March, 2022 totaling $751,462.49.[11] Plaintiff avers that Defendant paid a total amount of $951,462.49, which is "less than half of the proof of loss amounts submitted on behalf of Plaintiff by a public adjuster and separate

---

[5] *Id.* at 3–4.

[6] *Id.* at 4.

[7] *Id.* at 2.

[8] *Id.* at 4–5.

[9] *Id.* at 5.

[10] *Id.*

[11] *See id.*

water/environmental mitigation company, both of which produced" proof of loss evidence totaling $1,966,458.49.[12]

On July 1, 2022, Plaintiff filed a Complaint in this Court.[13] Plaintiff brings breach of contract and bad faith claims under Louisiana law against Defendant.[14] Defendant filed the instant motion to compel arbitration on February 7, 2023.[15] Plaintiff filed its opposition on February 14, 2023.[16]

## <u>II. Parties' Arguments</u>

### *A. Defendant's Arguments in Support of the Motion*

Defendant raises four arguments in support of its motion. First, Defendant asserts that the arbitration clause contained in the Policy is valid and enforceable, and that Courts have recognized the necessity of giving effect to such policy provisions.[17] Thus, Defendant avers that the Court should grant the instant motion because the Policy's plain language requires that "all disputes must be submitted to Arbitration."[18]

---

[12] *Id.* at 6.

[13] *See generally id.*

[14] *Id.* at 6–16.

[15] Rec. Doc. 24.

[16] Rec. Doc. 25.

[17] Rec. Doc. 24-1 at 4 (citing *Turbo Trucking Co. v. Those Underwriters at Lloyd's London*, 776 F.2d 527, 529 (5th Cir. 1985)) ("The court should eschew any interpretation of a policy which would render meaningless a policy provision.").

[18] *Id.* at 4.

Second, Defendant argues that the Policy contains a broad delegation clause that encompasses "all matters in difference" between the parties.[19] Defendant asserts that valid delegation clauses "are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator."[20] Defendant contends that motions to compel arbitration "should be granted in almost all cases" involving "an arbitration agreement [that] contains a delegation clause."[21] Defendant argues that this Court should grant the instant motion and compel arbitration because the parties "delegated all authority to resolve their disputes to the Arbitration Tribunal."[22]

Third, Defendant asserts that Louisiana law does not prohibit the enforcement of the Policy's arbitration clause because the Policy is a surplus lines policy.[23] Defendant argues that Louisiana Revised Statute § 22:868 does not prevent the enforcement of the arbitration clause because this provision does not apply to surplus lines insurance policies.[24] Defendant alleges that § 22:868(D) specifically exempts surplus lines insurance policies from the statutory prohibition on arbitration clauses in insurance policies that would deprive Louisiana courts of jurisdiction or venue.[25] Therefore, Defendant argues that the Court should grant this motion because courts interpreting Louisiana law have concluded "that surplus line carriers are not subject to the

---

[19] *Id.* at 6.

[20] *Id.* at 5 (quoting *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 202 (5th Cir. 2016)).

[21] *Id.* at 6 (quoting *Kubala*, 830 F.3d at 202).

[22] *Id.* at 7.

[23] *Id.* at 8.

[24] *Id.* at 7–8.

[25] *Id.* at 8.

requirements of La. R.S. § 22:868 when a [p]laintiff seeks to invalidate a forum selection clause."[26]

Fourth, Defendant avers that any argument that it has waived its right to enforce the arbitration provision is inconsistent with Louisiana jurisprudence.[27] Defendant argues that Louisiana courts have established a presumption against waiver of an arbitration clause and that the United States Supreme Court has defined waiver as "the intentional relinquishment of abandonment of a known right."[28] Defendant further asserts that the Louisiana Supreme Court has found that "[t]he mere answering of a judicial demand or the delay in filing the demand for arbitration does not constitute a waiver of the right to demand arbitration."[29] Defendant points out that one rare instance where the Fifth Circuit found waiver of an arbitration clause occurred where the party filed numerous dispositive motions and only moved to compel arbitration two weeks before the commencement of trial.[30] Thus, Defendant asserts that it has not waived its right to demand arbitration simply by responding to Plaintiff's complaint and engaging in discovery.[31]

***B. Plaintiff's Arguments in Opposition***

Plaintiff makes four arguments in opposition of the instant motion. First, Plaintiff asserts that Defendant's failure to include arbitration as an affirmative defense in its Answer and failure to bring the instant motion earlier than seven months from the initiation of this litigation constitutes

---

[26] *Id.* at 9.

[27] *Id.*

[28] *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

[29] *Id.* at 10 (citing *Matthews-McCraken Rutland Corp. v. Plaquemine*, 414 So. 2d 756, 757 (La. 1982)).

[30] *Id.* (citing *Precision Builders, Inc. v. Olympic Grp.,* 642 F. App'x. 395, 400 (5th Cir. 2016)).

[31] *Id.* at 11.

a waiver of its right to arbitration.[32] Plaintiff asserts that Defendant's statements in its motion that it did not seek arbitration until a new line of caselaw in this District found that surplus lines insurers were exempt from § 22:868 further evidences Defendant's abandonment of the arbitration clause.[33] Plaintiff further argues it would be prejudiced by an arbitration order because "any such arbitration would now effectively disrupt the scheduled trial date and basically force Fairway to start over again in a whole new proceeding."[34] Thus, Plaintiff argues that Defendant has waived its right to arbitration and that allowing arbitration would be prejudicial to Plaintiff.[35]

Second, Plaintiff argues that the legislative intent behind Louisiana Revised Statute § 22:868 provides that "Louisiana law continues to prohibit arbitration provisions in insurance policies, including surplus line policies."[36] Plaintiff avers that § 22:868 provided that prior iterations of the statute were "interpreted to prohibit arbitration clauses in insurance policies" because "such clauses deprive courts of jurisdiction of the action."[37] Plaintiff contends that the Louisiana Legislature's most recent amendment to §22:868 added Section (D) to provide that its prohibition does not apply to "a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance."[38] Plaintiff asserts that "the original purpose and language of La. R.S. 22:868, as an anti-arbitration statute, remains entirely intact and applies to all

---

[32] Rec. Doc. 25 at 3–4.

[33] *Id.* at 4–5.

[34] *Id.* at 6.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 7.

[38] *Id.* at 9.

insurers" including Defendant because Section (D) does not include language "allowing for a surplus carrier to include any arbitration clause that would deprive courts of the 'jurisdiction of action.'"[39]

Third, and alternatively, Plaintiff argues that Defendant has further waived its right to arbitration by disregarding the arbitration clause contained in the appraisal section of the insurance policy, which would be applicable to this case.[40] Plaintiff argues that the arbitration provision Defendant relies on provides general language about settling disputes between the parties, but "does not specifically state that it covers disagreements over the valuation of damage claims made under the policy."[41] Rather, Plaintiff argues that the Policy contains an entirely separate arbitration provision for "Appraisals" which would govern this matter.[42] Therefore, Plaintiff avers that Defendant has waived its right to arbitration because it elected not to assert the applicable arbitration provision in the Policy.[43]

Fourth, and again in the alternative, Plaintiff argues that it did not waive its constitutional right to access to the courts through the arbitration provision of the unsigned insurance policy.[44] Plaintiff alleges that Defendant has not offered any evidence demonstrating an explicit relinquishment or waiver of Plaintiff's constitutional right of access to the court because Defendant

---

[39] *Id.*

[40] *Id.* at 10.

[41] *Id.* at 11.

[42] *Id.*

[43] *Id.* at 12.

[44] *Id.*

presents only an arbitration provision in an unsigned insurance policy.[45] Plaintiff asserts that every Louisiana citizen has a constitutionally guaranteed right of access to the courts, and that Defendant would have had to make an affirmative showing as such a waiver is not presumed to prove Plaintiff waived such rights.[46] Therefore, Plaintiff argues that the Court must deny Defendant's motion because it did not sign the Policy attached to the motion, and Defendant has offered no other evidence demonstrating Plaintiff's waiver of its constitutional rights.[47]

## III. Legal Standard

The Federal Arbitration Act ("FAA") was enacted in 1924 to "allow[] a party to . . . an arbitration agreement to petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement."[48] In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the Fifth Circuit explained that the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[49] The Fifth Circuit further explained that "Section 2 of the FAA puts arbitration agreements on the same footing as other contracts."[50] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[51]

---

[45] *Id.* at 14.

[46] *Id.* at 13.

[47] *Id.* at 13–14.

[48] *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ*., 489 U.S. 468, 474 (1989) (internal quotation marks omitted).

[49] 379 F.3d 159, 166 (5th Cir. 2004).

[50] *Id.*

[51] *Id.*

Louisiana courts have found that under the FAA, which makes no exception for insurance contracts, arbitration clauses in contracts are enforceable and should preempt or supersede any state law to the contrary.[52] However, Congress enacted the McCarron-Ferguson Act ("MFA") in 1945 which provided that "any state law enacted for the purpose of regulating insurance will trump, or 'reverse preempt,' any contrary federal law that does not relate specifically to insurance."[53] The Louisiana Legislature promptly acted "to reverse-preempt the FAA, passing the predecessor to La. R.S. 22:868 as part of the Insurance Code."[54]

## IV. Analysis

The instant case involves an arbitration provision in a surplus lines insurance policy. The central question this Court must answer is whether Louisiana law prohibits the enforcement of the Policy's arbitration clause. Defendant asserts that § 22:868(A)(2)'s prohibition of insurance contract provisions that restrict the jurisdiction of Louisiana courts does not apply here because Defendant is a surplus line insurer.[55] Plaintiff maintains that § 22:868 is an anti-arbitration provision and that Louisiana courts and the Fifth Circuit have held that arbitration "deprive[s] the courts of jurisdiction over an action against an insurer."[56]

§ 22:868(A)(2) prohibits "any condition, stipulation, or agreement" in any "insurance contract delivered or issued for delivery in this state" that would "[d]eprive the courts of this state

---

[52] *Courville v. Allied Prof. Ins. Co.*, 13-976 (La. App. 1 Cir. 6/5/15), 174 So. 3d 659, 664–65.

[53] *Id.* at 665.

[54] *See Creekstone Juban I, LLC v. XL Ins. Am., Inc.*, 18-0748 (La. 5/8/19), 282 So. 3d 1042, 1052 (Weimer, J., concurring).

[55] Rec. Doc. 24-1 at 7.

[56] Rec. Doc. 25 at 7 (quoting *Cen. Claims Serv. v. Claim Prof's Liab. Inc*, 2011 U.S. Dist. LEXIS 99745, *10 (E.D. La. Aug. 30, 2011)).

of the *jurisdiction of action* against the insurer."[57] Because the plain language of the provision does not directly guide the outcome, this Court turns to the legislative history to ascertain the legislative intent underlying the provision.[58]

In 1948, in response to the enactment of the MFA, the Louisiana Legislature promulgated Louisiana Revised Statute § 22:629 of the Louisiana Insurance Code, the predecessor to § 22:868, to reverse-preempt the FAA.[59] In 2020, the Louisiana Legislature revised § 22:868 to add Section (D). Section (D) provides that "[t]he provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance."

In *Macaluso v. Watson*, the Louisiana Fourth Circuit Court of Appeal invalidated an arbitration clause in an insurance contract pursuant to the statute.[60] The Louisiana Fourth Circuit found that an arbitration agreement between the insurer and the insured was "void and unenforceable" because "its effect [was] to deprive the courts . . . of the jurisdiction of the plaintiff's action against the insurer" in contravention of La. R.S. 22:629(A)(2)."[61] The *Macaluso* court found that arbitration agreements encompassing all issues in dispute in insurance contracts violate the prohibition expressed in the Louisiana Insurance Code.[62]

---

[57] La. R.S. § 22:868(A)(2) (emphasis added).

[58] *See Creekstone*, 282 So. 3d at 1048 ("[T]he legislature is plainly aware of how to draft laws that unambiguously prohibit forum selection clauses, does so in very limited and specific contexts, and did not do so in La. R.S. 22:868(A)(2).")

[59] 1948 La. Acts 195 § 14.19 (Louisiana insurance code provision).

[60] 171 So. 2d 755 (La. App. 4 Cir. 1965).

[61] *Id.* at 757.

[62] *Id.* at 757–58.

Here, the Court cannot enforce the arbitration provision because Louisiana law regards arbitration provisions in insurance contracts as a "condition, stipulation, or agreement" that deprives Louisiana courts of jurisdiction over the action.[63] Defendant's status as a surplus lines insurer does not bear on the analysis. Defendant's argument that § 22:868(D) exempts surplus lines insurers from the anti-arbitration provision relies on a strained interpretation of this Court's prior jurisprudence. Defendant relies on a strained interpretation of Orders addressing motions to transfer pursuant to a valid forum selection clause contained in surplus lines insurance policies.[64] This case is easily distinguishable because it involves an arbitration clause contained in a surplus lines insurance policy, not a forum selection clause. As other courts have recognized, the plain language of § 22:868(D) is limited to forum and venue selection clauses, and "to read arbitration clauses into the text of Subsection D would be to confer a different meaning than intended by the legislators."[65] Numerous courts have found that § 22:868 is an anti-arbitration provision, voiding the effects of compulsory arbitration provisions in insurance contracts as contrary to public policy.[66] In accordance with this established principle, this Court finds that ordering the parties to arbitration is inappropriate in this case.

---

[63] *Courville*, 218 So. 3d at 148 ("In Louisiana, compulsory arbitration provisions in insurance contracts are prohibited as a matter of public policy because they operate to deprive Louisiana courts of jurisdiction over actions against the insurer; further, such provisions deny Louisiana citizens of free access to its courts, a right guaranteed by the state's constitution.").

[64] *See, e.g.*, *Burk Holding Co. v. Mt. Hawley Ins. Co.*, No. 22-3503, 2023 WL 183898, at *5–6 (E.D. La. Jan. 13, 2023) (Africk, J.) (finding that § 22:868(a)(2) did not render the forum-selection clause unenforceable).

[65] *Bufkin Enterprises LLC v. Indian Harbor Ins. Co.*, No. 2:21-CV-04017, 2023 WL 2393700, at *7 (W.D. La. Mar. 7, 2023) (Cain, J.).

[66] *Courville*, 218 So. 3d at 148; *Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So. 2d 1383, 1384 (La. 1982) ("Classification of the contract at issue as an insurance contract renders the arbitration provisions of that contract unenforceable.").

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Motion to Compel Arbitration"[67] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this 10th day of April, 2023.

Nannette Jolivette Brown

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

67 Rec. Doc. 24.